IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| RUSSELL MCINTYRE, | ) Civil Action No. |
| *Plaintiff*, | ) Electronically Filed |
| vs. | ) |
| CRASH CHAMPIONS, LLC, | ) |
| *Defendant*. | ) |

## COMPLAINT IN CIVIL ACTION

Plaintiff, Russell McIntyre, by and through the undersigned counsel, files the following Complaint in Civil Action against Defendant, Crash Champions, LLC, averring as follows:

### THE PARTIES

1. Plaintiff, Russell McIntyre ("Plaintiff"), is an adult individual who currently resides in Bethel Park, Pennsylvania 15102.

2. Defendant, Crash Champions, LLC ("Defendant"), is registered with Pennsylvania's Department of State (the "DOS") as a foreign limited liability company. Defendant maintains a principal address at 601 Oakmont Lane, Suite 400, Westmont, Illinois 60559 and has a registered office at 600 North Second Street, Suite 401, Harrisburg, PA 17101. Plaintiff reported to work at Defendant's facility located at 55 Crennell Avenue, Crafton, Pennsylvania 15205 (the "Facility").

### JURISDICTION AND VENUE

**A.  This Court Possesses Subject Matter Jurisdiction Pursuant to 28 U.S.C. § 1331 and Supplemental Jurisdiction Pursuant to 28 U.S.C. § 1367.**

3. This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1331 ("Federal Question Jurisdiction"), as Plaintiff is advancing claims under the Fair Labor

Standards Act 29 U.S.C. § 201, *et seq*. ("FLSA") (Plaintiff's claim arising under the FLSA is identified as the "Federal Law Claims").

4. Plaintiff is also advancing claims under the Pennsylvania Minimum Wage Act, 43 P.S. § 333.101, *et seq*. ("MWA") the Pennsylvania Wage Payment and Collection Law, 43 P.S. § 260.1, *et seq*. ("WPCL") (Plaintiff's claims arising under the MWA and the WPCL are identified as the "State Law Claims").

5. This Court may exercise supplemental jurisdiction over the State Law Claims pursuant to 28 U.S.C. § 1367(a) as the Federal Law Claim and the State Law Claims share operative facts that support the corresponding causes of action within the Federal Law Claims and the State Law Claim.

6. Further, the operative facts between the Federal Law Claim and the State Law Claims mirror one another to such a degree that they form the "same case or controversy" under Article III § 2 of the United State Constitution which further supports this Court's exercise of supplemental jurisdiction over the State Law Claims.

**B. The United States District Court for the Western District of Pennsylvania is the Appropriate Venue for this Matter Pursuant to 28 U.S.C. § 1391(b).**

7. Venue is proper in the United States District Court for the Western District of Pennsylvania, Pittsburgh division (the "Western District") as a substantial part of the events and omissions giving rise to the Federal Law Claims and State Law Claims occurred within this judicial district. Therefore, venue is proper pursuant to 28 U.S.C. § 1391(b).

8. Specifically, these events and omissions occurred in Allegheny County, Pennsylvania which is one of the counties encompassed by the Western District.

9. This matter is properly before the Pittsburgh Division of the Western District given the conduct complained of herein arose in Allegheny County, Pennsylvania, and conduct arising

within Allegheny County is docketed within the Pittsburgh Division of the Western District pursuant to Local Civil Rule 3 (LCvR 3).

**C.     This Court May Exercise Personal Jurisdiction Over Defendant.**

10.    Personal jurisdiction is proper over a Defendant if the Defendant is a registered Pennsylvania entity and has thus "consented" to the exercise of general personal jurisdiction pursuant to 42 Pa. C.S. § 5301.  *Aetna Inc. v. Kurtzman Carson Consultants, LLC*, No. 18-470, 2019 BL 114021, at *5 (E.D. Pa. Mar. 29, 2019) (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985); *Bane v. Netlink, Inc.*, 925 F.2d 637, 641 (3d Cir. 1991)).

11.    42 Pa. C.S. § 5301 states: "The existence of any of the following relationships between a person and this Commonwealth shall constitute a sufficient basis of jurisdiction to enable the tribunals of this Commonwealth to exercise general personal jurisdiction over such person."  42 Pa. C.S. § 5301(a).

12.    Accordingly, Defendant may properly be brought before this Court pursuant to 42 Pa. C.S. § 5301(a).

## FACTUAL BACKGROUND

13.    Plaintiff initiated his employment with Defendant on October 30, 2023, as an "Auto Body Technician" (the "Position").

14.    In this Position, Plaintiff earned $27.00 per hour and worked on vehicles from start to finish including damage assessments, estimates, breakdown of vehicles, ordering of parts, and vehicle repair, including welding, structural work, dent repair, mechanical, and electrical repair.

**A.     Denial of Overtime Wages**

15.    Defendant assigned Plaintiff an hourly rate of $27.00 and therefore an hourly overtime rate of $40.50.

16. Plaintiff was paid on a "per job" rate, where he was paid his hourly rate times the labor hours billed to the customer.

17. Plaintiff completed the labor hours and regularly worked 10-12 hours per day.

18. Regardless of how many hours Plaintiff actually worked, he was compensated only for his hourly rate times the labor hours billed to the customer.

19. This system led to Plaintiff working 80-100 hours per week while never receiving his owed overtime rate of pay for hours worked in excess of 40 hours in a seven-day period.

20. As such, Defendant deprived Plaintiff of the overtime premium of $13.50 per hour from October 30, 2023, through January 17, 2025 - approximately 63.5 weeks.

21. Due to Defendant's denial of overtime premium, Plaintiff is owed approximately $34,290.00 ($13.50 premium x 40 hours per week = $540.00 x 63.5 weeks = $34,290.00).

**B.    Denial of Regular Rate Wages**

22. Additionally, Plaintiff worked approximately 84 hours during his final week of work but was paid only $216.00 in his final paycheck, when he should have been paid $2,268.00.

**C.    Denial of Accrued Bonus**

23. On January 2, 2025, Plaintiff handed a two-week resignation notice to Regional Manager, Jeff Spangenelli ("Mr. Spangenelli").

24. The following day, Mr. Spangenelli offered Plaintiff a $5,000 bonus to stay with Defendant and promised the bonus would be directly deposited into his account the following week.

25. Plaintiff signed a contract outlining the same. The contract is currently in the possession of Defendant.

26. As of January 10, 2025, the end of the following week, Defendant refused to deposit the check into Plaintiff's account.

27. In an effort of good faith, Plaintiff decided to wait until his next paycheck to see whether it would be deposited.

28. On January 15, 2025, Plaintiff received a paycheck for $216.00, even though he had worked 84 hours, as previously averred.

29. On January 17, 2025, Plaintiff attempted to address the pay discrepancy and the missing $5,000 bonus with Defendant's management team, but they refused to speak with him.

30. Defendant refused to pay what was owed, and Plaintiff resigned the following day for failure to properly compensate him.

**D.    Damage to Personal Property**

31. At the time of Plaintiff's separation from employment at Defendant, Plaintiff's personal vehicle - a silver 2019 Toyota Camry - was stored at Defendant's Facility.

32. Defendant intentionally, knowingly, and carelessly parked Plaintiff's vehicle in an area where paint overspray is regularly utilized.

33. Plaintiff's vehicle became covered in paint overspray and severely damaged.

34. Plaintiff obtained an estimate to repair the damage caused by Defendant from Don Wolbert, Jr. at Rohrich Automotive Group. A copy of the estimate is attached hereto and identified as **Exhibit A**.

35. The estimate totaled $3,936.12 including the parts, body labor, paint labor, paint supplies, and mechanical labor.

## COUNT I
### FAILURE TO REMIT WAGES IN VIOLATION OF THE FLSA
### 29 U.S.C. § 201, *et seq.*

36. Plaintiff incorporates all allegations contained in the paragraphs above, as if fully set forth at length herein.

37. The FLSA mandates certain minimum rates of pay for time covered "employees" spend dedicated to workplace operations. 29 U.S.C. §§ 206, 207. The FLSA establishes a heightened rate of one hundred fifty percent (150%) multiplied by the employee's base rate of pay for any hours worked in excess of 40 hours within a seven-day period, commonly known as "overtime" or "time and a half" pay. 29 U.S.C. § 207.

38. 29 U.S.C. § 203(d) delineates the definition of an "employer" as follows: "Employer" includes any person acting directly or indirectly in the interest of an employer in relation to an employee and includes a public agency, but does not include any labor organization (other than when acting as an employer) or anyone acting in the capacity of officer or agent of such labor organization. 29 U.S.C. § 203(d).

**A.      Plaintiff was Denied an Overtime Rate of Pay Pursuant to 29 U.S.C. § 207.**

39. At all times relevant hereto, Defendant was mandated to pay Plaintiff one hundred fifty percent (150%) of his corresponding base rate of pay for any time worked beyond forty hours in a seven-day period. 29 U.S.C. § 207(a)(1).

40. The Defendant did not compensate the Plaintiff for the Unpaid Overtime at said rate in violation of the FLSA.

B.     **Plaintiff is Entitled to Liquidated Damages Pursuant to the FLSA.**

41.     29 U.S.C. § 216(b) of the FLSA provides that when an employer violates 29 U.S.C. § 207(a)(1), an employee may collect liquidated damages in an amount equal to the amount of wages that are due and owing and, additionally, an award of attorney's fees. *Id*.

42.     An award of liquidated damages pursuant to the FLSA is not penal in nature, but rather, is viewed as a compensatory remedy. *Martin v. Selker Bros.*, 949 F.2d 1286, 1299 (3d Cir. 1991), citing *Overnight Motor Transp. Co. v. Missel*, 316 U.S. 572, 583-84 (1942).

43.     Indeed, the Supreme Court of the United States has opined on the compensatory nature of this remedy, describing it as compensation for the "workman's pay which might result in damages too obscure and difficult of proof for estimate other than by liquidated damages." *Schonewolf v. Waste Mgmt., Inc.*, No. 17-3745, 2018 BL 92619, at *5 (E.D. Pa. Mar. 19, 2018) citing *Brooklyn Sav. Bank v. O'Neil*, 324 U.S. 697, 707-08 (1945).

44.     As the Defendant violated 28 U.S.C. § 207(a)(1), they are liable to Plaintiff for liquidated damages (100% of the Unpaid Overtime), as well as reasonable attorneys' fees, costs, and expenses pursuant to 29 U.S.C. § 216(b).

WHEREFORE, Plaintiff, Russell McIntyre, seeks damages in the amount of the Unpaid Overtime, plus 100% of the Unpaid Overtime as liquidated damages, plus attorney's fees, costs, and expenses.

**COUNT II**
**FAILURE TO REMIT WAGES IN VIOLATION OF THE MWA**
**43 P.S. § 333.101,** *et seq***.**

45.     Plaintiff incorporates the above paragraphs, as if fully set forth at length herein.

46.     The MWA mandates a heightened rate of pay for any hour worked in excess of 40 hours per workweek. *See* 43 P.S. § 333.104.

47. Specifically, Section 4(c) controls the premium compensation rate for overtime hours and states, in relevant part, that "[e]mployees shall be paid for overtime not less than one and one-half (1.5) times the employee's regular rate ... " 43 P.S. § 333.104(c).

48. The MWA defines "employer" to include "any individual, partnership, association, corporation, business trust, or any person or group of persons acting, directly or indirectly, in the interest of an employer in relation to any employe." 43 P.S. § 333.103(g).

49. The MWA defines "employe[e]" to include "any individual employed by an employer." 43 P.S. § 333.103(h).

50. Given Defendant's status as "employer" and Plaintiff's status as an "employee," Defendant was obligated to comply with the overtime rate of pay requirements of the MWA.

51. At all relevant times hereto, Defendant failed to pay Plaintiff one and one-half times his corresponding base rate of pay for any time worked beyond 40 hours in seven-day period. 43 P.S. § 333.104(c).

52. As previously averred, Defendant worked a minimum of 40 hours of overtime on a weekly basis.

53. Defendant deprived Plaintiff of the overtime premium of $13.50 per hour from October 30, 2023, through January 17, 2025 - approximately 63.5 weeks.

54. Consequently, Plaintiff engaged in hours of work that Defendant was legally obligated to compensate him at the overtime rate of pay.

55. Defendant did not compensate Plaintiff overtime pay for the hours that he worked in excess of 40 hours per week, in violation of the MWA.

56. Defendant violated 43 P.S. § 333.104(c) in failing to pay Plaintiff overtime wages.

57. In addition, the MWA provides for the recovery of attorney's fees and costs when an employer fails to pay an employee in accordance with 43 P.S. §§ 333.112 and 333.113.

58. Defendant is liable to Plaintiff for actual damages (lost wages), as well as reasonable attorney's fees, costs, and expenses pursuant to 43 P.S. § 333.113.

59. As a direct and proximate result of Defendant's conduct described hereinabove, Plaintiff has suffered tangible economic and pecuniary loss in forms including, but not limited to, the deprivation of lawfully owed wages.

WHEREFORE, Plaintiff, Russell McIntyre, seeks damages in the amount of the Unpaid Overtime, plus attorney's fees, costs, and expenses.

## COUNT III
## FAILURE TO REMIT REGULAR WAGES AND BONUS IN VIOLATION OF THE WPCL
## 43 P.S. § 260.1 *et seq.*

60. Plaintiff incorporates the above paragraphs, as if fully set forth at length herein.

61. The WPCL provides the employee with a statutory remedy to enforce his rights where an employer breaches its fundamental contractual obligation to pay wages owed to said employee. See *Weldon v. Kraft, Inc.*, 896 F.2d 793, 801 (3d Cir. 1990).

62. The contract between the employer and the employee governs the determination of the specific wages earned by the employee. *Id*. (citing *Sendi v. NCR Comten, Inc.*, 800 F.2d 1138 (3d Cir. 1986)).

63. This statutory remedy created by the WPCL creates both a private cause of action to any employee to whom "any type of wages" are owed and bestows "any court of competent jurisdiction" with the power to maintain such an action. 43 P.S. § 260.9a(b).

9

64. To recover under the WPCL, a plaintiff must demonstrate: (1) a contractual entitlement; (2) to compensation from wages; and (3) a failure to pay that compensation." *Carlson v. Qualtek Wireless LLC*, No. 22-125, 2022 BL 277728, at *14 (E.D. Pa. Aug. 10, 2022).

65. Further, an employee must establish "an implied oral contract between the employee and the employer." *Id*.

66. The WPCL defines an "employer" to include every person, "association," or "corporation" and, further, "any agent or officer of any [corporation] employing any person in this Commonwealth."

67. The Defendant is a business association and/or corporation that employs individuals, including Plaintiff, within the geographic boundaries of the Commonwealth of Pennsylvania and, therefore, is an employer under 43 P.S. § 260.2a.

68. As averred previously, Defendant and Plaintiff have effectuated an employment relationship, whereby Plaintiff was an employee. This factual reality remains true for the purposes of the WPCL as well.

69. The WPCL defines "wages" to include all "earnings of an employee" and further includes within this definition any "fringe benefits or wage supplements." 43 P.S. § 260.2a.

**A.  Plaintiff and Defendant Engaged in a Contract for Plaintiff's Employment in Exchange for an Hourly Rate of Pay.**

70. Defendant agreed to pay Plaintiff $27.00 per hour as an Auto Body Technician.

71. Defendant also agreed to pay Plaintiff a bonus of $5,000.

**B.  Plaintiff Has Accrued Owed Compensation From Defendant in the Form of "Wages."**

72. Defendant refused to pay Plaintiff the full amount for his final week of work.

73. On January 15, 2025, Plaintiff received a paycheck for $216.00, even though he had worked 84 hours.

74. Furthermore, Defendant refused to pay Plaintiff the promised $5,000 bonus.

**C.    An Award of Liquidated Damages is Appropriate Given Defendant's Failure to Provide Plaintiff with His Wages.**

75. Section 260.9a(b), in conjunction with Section 260.10 of the WPCL, permits an employee to institute an action for unpaid wages and liquidated damages. These statutory provisions state as follows:

> Actions by an employe, labor organization, or party to whom any type of wages is payable to recover unpaid wages and liquidated damages may be maintained in any court of competent jurisdiction, by such labor organization, party to whom any type of wages is payable or any one or more employes for and in behalf of himself or themselves and other employes similarly situated, or such employe or employes may designate an agent or representative to maintain such action or on behalf of all employes similarly situated. Any such employe, labor organization, party, or his representative shall have the power to settle or adjust his claim for unpaid wages.

43 P.S. §260.9a(b).

> Where wages remain unpaid for thirty (30) days beyond the regularly scheduled payday, or, in the case where no regularly scheduled payday is applicable, for sixty (60) days beyond the filing by the employe of a proper claim or for sixty (60) days beyond the date of the agreement, award or other act making wages payable, or where shortages in the wage payments made exceed five percent (5%) of the gross wages payable on any two regularly scheduled paydays in the same calendar quarter, and no good faith contest or dispute of any wage claim including the good faith assertion of a right of set-off or counter-claim exists accounting for such non-payment, the employe shall be entitled to claim, in addition, as liquidated damages an amount equal to twenty-five percent (25%) of the total amount of wages due, or five hundred dollars ($500), whichever is greater.

43 P.S. § 260.10.

76. Defendant has not asserted (and cannot assert) a good faith contest or dispute as to the amount of Plaintiff's disbursed wages.

11

77. Defendant's actions described hereinabove were the direct and proximate cause that resulted in violations of Plaintiff's rights under the WPCL, deprivation of his statutory entitlement to accrued wages, and the total amount of Plaintiff's damages.

78. Consequently, Plaintiff is entitled to an award of liquidated damages pursuant to 43 P.S. § 260.10.

**D.  Plaintiff is Entitled to Reasonable Attorneys' Fees and Costs Incurred in Pursuit of His Unpaid Wages.**

79. In addition, 43 P.S. § 260.9a(f) mandates that where a plaintiff obtains a favorable judgment, the plaintiff is entitled, as a matter of right, to an award of attorneys' fees:

> The court in any action brought under this section shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow costs for reasonable attorneys' fees of any nature to be paid by the Defendants.

43 P.S. § 260.9a(f).

81. Plaintiff is entitled to reasonable attorneys' fees pursuant to 43 P.S. § 260.9a(f) that were incurred as a result of redressing Defendant's conduct described hereinabove.

82. As a direct and proximate result of Defendant's conduct described hereinabove, Plaintiff has suffered tangible economic losses resulting from the deprivation of lawfully owed wages.

WHEREFORE, Plaintiff, Russell McIntyre, seeks damages in the amount of his owed wages from his final week of work with Defendant as well as the promised bonus in the amount of $5,000. Furthermore, Defendant owes Plaintiff liquidated damages in the amount of 25% of the owed wages and attorneys' fees, costs, and expenses.

## COUNT IV
## BREACH OF CONTRACT IN VIOLATION OF PENNSYLVANIA COMMON LAW

83. Plaintiff incorporates the allegations contained in in the paragraphs above, as if fully set forth at length herein.

84. To establish an action sounding in breach of contract, a plaintiff must establish "(1) the existence of a contract, (2) a breach of a duty imposed by the contract, and (3) damages." *Sullivan v. Chartwell Inv. Partners, L.P.*, 873 A.2d 710, 717 (Pa. Super. 2005), citing *J.F. Walker Co., Inc. v. Excalibur Oil Group, Inc.*, 792 A.2d 1269 (Pa. Super. 2002).

**A.  Plaintiff and Defendants Formed a Contract.**

85. On January 3, 2025, Defendant promised Plaintiff a bonus in the amount of $5,000 to be paid out the following week.

86. Plaintiff signed a contract with Defendant outlining the same. The contract is currently in the possession of Defendant.

**B.  Defendants Breached the Contract By and Through Their Failure Plaintiff the Settlement Payments.**

87. Defendant has refused to pay Plaintiff the agreed $5,000 Bonus.

**C.  Plaintiff Was Damaged by Defendant's Breach of the Contract.**

88. Plaintiff has suffered economic loss when he did not receive his promised Bonus.

89. Furthermore, Plaintiff has incurred the expense of filing this present suit to enforce his rights, including court costs and attorney's fees.

90. Defendant's actions described hereinabove were the direct and proximate cause that deprived Plaintiff of his entitlement to payment.

WHEREFORE, Plaintiff, Russell McIntyre, seeks the damages in the amount of the $5,000 promised bonus as well as attorneys' fees, costs, and expenses incurred in pursuit of the matter.

## COUNT V
## TRESPASS TO CHATTELS IN VIOLATION OF PENNSYLVANIA COMMON LAW

91. Plaintiff incorporates the allegations contained in the paragraphs above, as if fully set forth at length herein.

92. "A trespass to a chattel may be committed by intentionally (a) dispossessing another of the chattel, or (b) using or intermeddling with a chattel in the possession of another." Restat 2d of Torts, § 216.

93. When the owner of chattel "temporarily relinquishes physical control of it, without abandoning the chattel ... so long as no other person has obtained possession by acquiring physical control over the chattel with the intention of exercising such control on his own behalf ... the law protects the property interest by attributing the possession to the original possessor." *Id*. cmt. c. (Am. Law Inst. [2025]).

94. "Property is abandoned when its possessor voluntarily relinquishes "all right, title, claim and possession," of the property "with the intention of not reclaiming it." *Taffaro v. Taffaro*, No. A-3912-12T2, 2015 N.J. Super. Unpub. LEXIS 1321, at *7 (Super. Ct. App. Div. June 5, 2015).

**A.    Plaintiff was "In Possession" of the Chattel.**

95. Plaintiff left his Motor Vehicle at Defendant's Facility with no intent to relinquish any right, title, claim or possession to it.

**B.    Defendant Intermeddled with the Machine.**

96. As averred hereinabove, Defendant impliedly agreed to maintain Plaintiff's Motor Vehicle while it was on Defendant's property.

97. Defendant intentionally, knowingly, and carelessly parked Plaintiff's vehicle in an area where paint overspray is regularly utilized.

14

98.     Plaintiff's Motor Vehicle incurred significant damage in the amount of $3,936.12 while at the Facility.

**C.      Plaintiff Suffered Damages as a Result of Defendant's Trespass to Chattel.**

99.     "Damages for conversion and trespass to chattels may be based on the market value of property that is permanently converted, the diminution in market value as a result of a temporary conversion or trespass, or damages associated with the loss of use of personal property." *Sherwood v. Farber*, 266 A.3d 663 (Pa. Super. Ct. 2021).

100.    Additionally, "a plaintiff who is tortiously deprived of property may recover the special value of the property to [him] if greater than the market value of the property." *Id*.

101.    As averred hereinabove, the Motor Vehicle sustained damage in the amount of $3,936.12. **Exhibit A**

102.    As a direct and proximate result of Defendant's conduct described hereinabove, Plaintiff has suffered tangible economic and pecuniary loss in forms including, but not limited to, the damage to his Motor Vehicle in the amount of $3,936.12.

**WHEREFORE**, Plaintiff, Russell McIntyre, seeks damages in the amount of $3,936.12 as well as attorney's fees, costs, and expenses.

## JURY DEMAND

103.    Plaintiff demands a trial by jury on all matters so triable.

Date: October 24, 2025					Respectfully submitted,

					**THE WORKERS' RIGHTS LAW GROUP, LLP**

					By: /s/ *Brendan K. Petrick*
					    Brendan K. Petrick, Esq. (Pa. I.D. No. 88968)

					    /s/ *Patrick W. Carothers*
					    Patrick W. Carothers, Esq. (Pa. I.D. No. 85721)

					    /s/ *Elizabeth A. Murphy*
					    Elizabeth A. Murphy, Esq. (Pa. I.D. No. 334769)

					The Workers' Rights Law Group, LLP
					Foster Plaza 10
					680 Andersen Drive, Suite 230
					Pittsburgh, PA 15220
					Telephone: 412.910.9592
					Facsimile: 412.991.7510
					brendan@workersrightslawgroup.com
					patrick@workersrightslawgroup.com
					elizabeth@workersrightslawgroup.com

					*Counsel for Plaintiff, Russell McIntyre*